ADLER et al. vs. THE STATE.

35 517
58 231

35 517
672 533

1. CIRCUIT COURT: *Power to issue writ of error coram nobis: Change of venue.*

A circuit court judge has power, after the expiration of a term, to issue the writ of error *coram nobis* to reverse a judgment of conviction in a criminal case, where it appears that the defendant was insane at the time of the trial, and the fact was not made known at the trial; and upon the assignment of such error in fact, if disputed by the state, to cause a jury to be impannelled in term to try such issue; and the venue for the trial of such issue may be changed to another county, but the change carries the whole case.

2. BAIL: *Principal confined for insanity in another state, no defense for.*

That the defendant, at the time he was required by the conditions of his bail-bond to appear to an indictment, was insane, and had been taken out of the state and confined in an insane asylum of another state, to be treated for his insanity, is no defense for his sureties, in a prosecution on the bond.

3. BAIL-BOND: *Approval by sheriff not essential.*

The indorsement upon a bail-bond, of the approval of the officer taking it, is not essential to its validity.

APPEAL from *Lawrence* Circuit Court.

Hon. R. A. POWELL, Circuit Judge.

*Rose*, for appellants.

*Attorney General Henderson, contra.*

ENGLISH, C. J. This was a Code action upon a forfeited bail-bond, determined in the circuit court of Lawrence county.

The novel questions presented on this appeal will be better understood by stating the material facts as they appear in the transcript before us, chronologically.

On the twenty-second of January, 1876, David Kahn and three other persons were jointly indicted for murder, in the circuit court of Independence county.

On a day of the July term, 1876, the state moving for the arraignment of Kahn, who was at the bar, in custody, the court asked him if he was represented by counsel, and he answering that he was not, the court offered to appoint counsel for him, which he declined, saying that he would manage the case for himself; thereupon he moved to set aside the indictment, which motion the court overruled. He then entered a demurrer to the indictment, which, after argument, he withdrew by permission of the court. On being arraigned he stood mute, and the court ordered the plea of not guilty entered for him. He was tried at the same term, and the jury found him guilty of murder in the first degree. He filed a motion in arrest of judgment, which was overruled, and he was sentenced to suffer the death penalty on the twenty-ninth of September, 1876. After sentence the court permitted counsel to file a motion for a new trial for him, which was overruled.

On the nineteenth of September, 1876, an application was made to the circuit judge for a writ of error, *coram nobis*, and stay of execution, upon the affidavit of Sol. Adler, as the next friend of Kahn, that he was insane at the time of the commission of the offense, and at the time he was tried and sentenced, and the writ was refused.

But on the twenty-fifth of November, 1876, the judge issued the writ, directed to the clerk of the circuit court of Independence county, returnable to the then next term of the court, to commence on the eighteenth of December, 1876; and in the meantime, we suppose, had issued a supersedeas; for Kahn was not hung on the day fixed for his execution in the sentence.

In obedience to the writ of error *coram nobis*, the clerk made out and returned a transcript of the record of the proceedings and judgment in Kahn's case.

On the eighteenth of January, 1877, and during the return term, Kahn, by his next friend, Sol. Adler, filed an assignment of error, in substance as follows :

1. That at the time of the alleged commission of the offense with which he was charged, he was insane, and not capable of distinguishing between right and wrong, and not in law responsible for any act by him committed.

2. That at the time of the trial he was insane, and not mentally capable of defending himself.

3. That he was still insane, and that at the time of the trial the defense of insanity was not interposed, because on account of his insanity he refused to let himself be defended by counsel, so that the question of insanity was not and could not be raised.

Prayer that the errors of fact assigned be tried by a jury, and that the judgment rendered at a former term of the court might be reversed, annulled and held for naught.

At the July term, 1877, Kahn, by his next friend, Sol. Adler, applied for a change of venue, upon the affidavit of Adler, supported by the affidavit of three other persons, citizens of the county, that the minds of the inhabitants of Independence county were so prejudiced against Kahn that he could not have a fair and impartial trial therein; whereupon the court made an order that the venue be changed to the circuit court of Lawrence county ; that the clerk make out and transmit to the clerk of that court a transcript of the record, etc., and that the sheriff of Independence county remove the body of Kahn to the jail of Lawrence county, for safe keeping, etc.

In the Lawrence circuit court the case was docketed as—

DAVID KAHN, by his next friend, Sol. ⎫
    Adler, plaintiff in error,      ⎬ Writ of errror,
             vs.                ⎭ *coram nobis.*
THE STATE OF ARKANSAS, defendant.

And at the September term, 1877, Kahn was brought into court, and the attorney for the state filed a motion to compel the plaintiff in error to elect upon which count in the assignment of errors he would prosecute, which was resisted by counsel for Kahn, and by the court overruled.

Whereupon the attorney for the state represented to the court that, from the depositions of witnesses then on file in the case, and from information derived from various sources, there was much conducing to show that Kahn, at the time of his trial in the Independence circuit court, on the indictment for the murder of Benjamin Baker, was insane, and had not mental capacity to defend himself, and should not have been put on trial; and admitted that this would be sufficient cause to vacate the judgment and grant a new trial. Whereupon, by agreement of parties, it was considered and adjudged by the court, that the judgment of the Independence circuit court against Kahn be reversed, set aside and held for naught. And it appearing to the court that the transcript before it in that proceeding contained a complete transcript of the record of the proceedings, etc., including the indictment, had in the Independence circuit court against Kahn for the murder of Baker, the court held that by virtue of the change of venue, it had jurisdiction to try Kahn upon the indictment, and ordered a trial *de novo*, with leave to Kahn to interpose any defense whatever to the indictment, as if there had been no previous trial; and directed the clerk to place the case on the

criminal docket as the state against David Kahn, charged with murder, etc.

Neither party being ready for trial, the case was continued to the next term; and, on the application of Kahn, an order was made that he be admitted to bail in the sum of five thousand dollars.

At the March term, 1878, the attorneys for the parties announced themselves ready for trial, Kahn being present, but the court being in doubt as to his sanity, ordered the trial to be postponed until a jury could be impannelled to inquire whether he was of unsound mind or otherwise. A jury was impannelled, and, pending the inquiry, one of them was taken sick and unable further to attend, and they were discharged, and by consent, the case continued. Whereupon, on application of Kahn's counsel, his bail was reduced and fixed at $2,500, and he was remanded to the custody of the sheriff, who was authorized to take bail in that sum for his appearance at the next term to answer the indictment.

Under this order the bail-bond, which is the subject of this action, was executed by Sol. Adler and Ben. Adler. At the September term, 1878, Kahn and his bail failing to appear, a forfeiture was entered upon the bond and a summons ordered to the bail.

At the return term, March, 1879, the Adlers filed an answer, containing four Code paragraphs, in substance as follows:

I. That at the July term, 1873, of the circuit court of Independence county, Kahn was tried, convicted and sentenced to be executed for the murder of Baker; that before his execution, which was suspended for that purpose, he obtained a writ of error *coram nobis*, from the judge of that court, on the ground of alleged insanity at the time

of his trial and conviction, which writ was duly returned to that court, and an issue of fact as to his sanity when tried, formed, and stood there ready for trial. That afterwards, and while said issue was pending, upon the applicatiou of Kahn, the venue in said case, so far as the said issue of sanity was concerned, was, by order of said court, changed to the circuit court of Lawrence county, and a transcript of the papers and records of the Independence circuit court, pertaining thereto, made out and certified to the circuit court of Lawrence county, and the venue of said issue changed thereto, and Kahn transferred to the custody of the sheriff of said county. That afterwards, at the September term, 1877, of the Lawrence circuit court, the said issue of fact coming on to be tried, the judgment was reversed, upon an admission of the attorney for the state that Kahn was insane when tried, and. a new trial ordered upon the indictment. That afterwards, at the March term, 1878, of said court, Kahn being in the custody of the sheriff, etc., was admitted to bail in the sum of $2,500, for his appearance on the first day of the next September term of said court for the year 1878, etc., and respondents became his sureties upon the bail-bond, etc. That Kahn failed to appear as required by the condition of the bond, and a forfeiture was taken, etc. All of which would appear by reference to the transcript, etc., on file, and the record of the proceedings of the court, etc. Wherefore, respondents, for cause why judgment final should not be rendered against them, say: "1. That the offense with which said Kahn is charged is alleged to have been committed in the couuty of Independence, and the indictment against him for said offense was found and is still pending in the circuit court of the county last aforesaid, and has not been transferred or changed by any legal or valid pro-

ceeding to this court, so as to give jurisdiction to it. 2. That this court had jurisdiction neither of Kahn nor of the criminal charge against him, for trial or investigation thereof, or for any purpose whatever, after the determination of the said issue of fact of sanity or insanity of Kahn, transferred to this court by change of venue, from the circuit court of Independence county, as aforesaid. 3. Because said bond was not taken by any court or officer authorized by law to take or receive any bail-bond in said case; and, 4. Because said Kahn was not bound to appear in this court, as required by said bond, to answer any charge of murder, or other offense; and, 5. Because said bond was taken without authority of law, and is, to all intents and purposes, null and void.

II. The second paragraph of the answer alleged, in substance, that Kahn was insane and confined in jail, etc., when the bail-bond was executed, and incapable of becoming bound upon any obligation, and, therefore, respondents were not liable as sureties upon the bond.

III. And for a further defense, defendants say that at the time said bail-bond required the appearance of Kahn before the circuit court of Lawrence county, to-wit, on the first day of the September term, 1878, and during the whole of said term, Kahn was insane, and was confined in a lunatic asylum, in the state of New York, beyond the jurisdiction of said court; that he had been thither carried and there confined, under medical treatment for the cure of his said malady, and was by law, and by the rules and regulations of said asylum, restrained and imprisoned, beyond the control or power of respondents as his sureties upon said bail-bond, and beyond the control or power of said court, or of the state of Arkansas. And respondents aver that there was not, at the time aforesaid, nor is there

now, within this state, any public or private lunatic asylum known to them, or other institution fit or suitable for the treatment, care, cure and safe-keeping of insane persons; and that said Kahn, being insane, as aforesaid, was carried to the asylum aforesaid, in the state of New York, for the purpose of effecting a cure, as aforesaid, and of preventing harm to the public, and still remains confined and imprisoned in said asylum, so that he could not come or be brought before said court in response to the requirements of said bond; and so respondents say they are not responsible upon or for the forfeiture thereof.

. IV.    That said pretended bond, the forfeiture of which respondents are summoned to show cause against, was never approved by any officer or court authorized by law to take and approve the same, nor was the same properly returned into said court by any officer authorized by law to return the same, etc.    Prayer for judgment, etc.

The state demurred to the first, second and third paragraphs of the answer, and the court sustained the demurrer.

The case was submitted to the court, sitting as a jury, on the fourth paragraph of the answer, and the court found in favor of the state, and rendered judgment against defendants for the amount of the penalty of the bail-bond; they filed a motion for a new trial, which the court overruled, and they took a bill of exceptions and appealed to this court.

1. CIRCUIT JUDGE: Power to issue writ of error coram nobis. Change of venue.

I.    The first paragraph of the answer does not question the power of the judge of the circuit court of Independence county to issue the writ of error coram nobis, nor the power of that court, after the return of the writ and the assignment of errors of fact, to make the order changing the venue to the circuit court of Lawrence county, but

avers that the venue was changed for the sole purpose of trying the issue as to Kahn's sanity when tried on the indictment, and that when that error of fact was confessed by the attorney for the state, and the judgment reversed and a new trial ordered, the purpose of the change of venue was accomplished, and that the circuit court of Lawrence county had no further jurisdiction of the case, and that all of its subsequent proceedings, including the order under which Kahn was admitted to bail, the bail-bond, and the entry of its forfeiture, were *coram non judice* and void.

As jurisdictional questions involved in this case, we have examined authorities to ascertain whether the writ of error *coram nobis*, as used at common law, has any place in our system of jurisprudence, and, if it has, whether upon an error of fact assigned, to be tried by a jury, there can be a change of venue at all.

We have no statute or constitutional provision expressly providing for or regulating the writ of error *coram nobis*, but the common law of England, so far as applicable to our form of government, and not inconsistent with the constitution and laws of the United States, or the constitution and laws of the state, is the rule of decision in criminal as well as civil cases. *Gantt's Digest, p. 261.*

Whether the circuit court, in the exercise of its common law powers, may issue the writ of error *coram nobis*, has not heretofore been decided by this court.

In the case of *King & Houston v. State Bank, 9 Ark., 187*, where a record entry had been amended, on motion, in the circuit court, after the term at which it was made, and after writ of error, and the amendment brought into this court on *certiorari*, Justice Scott, delivering the opinion of the court, said:

"It is insisted that the court below erred in permitting

the plaintiffs in error, on their motion, to amend the record after the judgment term had elapsed. The writ of error *coram nobis*, which, at common law, was granted in cases like this *ex debito justiciæ*, has almost entirely fallen into disuse in the United States, from the fact that, in our practice, the end that was accomplished by it is now achieved by mere motion supported by evidence offered the court in a summary way, most usually by affidavits, upon which the court either grants or refuses the relief sought," etc.

The king's bench had original as well as appellate jurisdiction; and errors of law appearing in its record were reviewed by the house of lords, on writ of error, but where the error was one of fact, as where the defendant, being under age, appeared by attorney, or where the plaintiff or defendant was a married woman at the commencement of the suit, or died before verdict, or before interlocutory judgment, a writ of error *coram nobis* might be issued and the errors determined in the same court.

BACON says:

" If, upon a judgment in B. R., there be error in the process, or through the default of the clerks, it shall be reversed in the same court by writ of error sued there before the same judges.

"So, if one is indicted of treason or felony in B. R., or, being indicted elsewhere, the indictment is removed into B. R., and by process of that court he is erroneously outlawed, and so returned, a writ of error may be brought in B. R. for the reversal thereof.

"Also, if an erroneous judgment in point of law be given in B. R. upon an indictment in London, a writ of error may be brought in the same court; for though in civil cases error does not lie in the same court, unless for

matter of fact, yet in criminal cases it lies as well for an error in law as in fact.

" But, if an erroneous judgment be given, and the error lies in the judgment itself and not in the process, a writ of error does not lie in B. R. of such judgment.

" But if a party be dead when the judgment is given, that is the act of God, not the error of the court, and it seems the writ well lies in the same court." *3 Bacon's Abridgment Error, p. 366.*

In *United States v. Plumer, 3 Clifford, 29,* Plumer was convicted for murder on the high seas, in the circuit court of the United States for the district of Massachusetts, and, after he had withdrawn motions in arrest of judgment and for a new trial and had been sentenced, he applied to the court for a writ of error *coram nobis,* on various grounds. The writ was refused by Justice CLIFFORD, on the ground that the court had no common law jurisdiction in criminal cases, and that no provision had been made for such writ in the acts of congress. The judgment, however, still being under the control of the court, the term at which it was rendered not having closed, he examined the alleged errors, and refused to set aside the judgment.

In *Teller v. Wetherell et al., 6 Mich., 46,* the error assigned was one of fact, the death of a party before the suit was brought, and a motion was made to quash the assignment, and dismiss the writ of error, on the grounds that the supreme court had no jurisdiction of errors of fact; that errors of fact were cognizable only in the circuit court where the judgment was rendered, on writ of error *coram nobis.* But the court overruled the motion, holding that it (the supreme court) had original as well as appellate jurisdiction, and could hear and determine an error of fact assigned, and, if necessary, a venire might be issued for a jury to try

Adler et al. vs. The State.

the issue of fact in that court, or it might be sent to the proper circuit for trial. It was also held that the circuit court, under powers conferred upon it by the constitution of Michigan, could not issue the writ of error *coram nobis*.

So it seems error of fact may be assigned in the supreme court of New York, and tried by a jury there. (*Arnold et al. v. Sanford, 14 Johnson, 417; Higbie et al. v. Comstock, 1 Denio, 652; Smith v. Kingley, 19 Wend., 620.*) The courts of common pleas, being creatures of the statute, and inferior courts, could not correct such error by writ of error *coram nobis*, but on writ of error to the supreme court the error of fact might be there assigned and tried. *The People v. Common Pleas of Oneida, 20 Johnson, 22.*

But an error of fact can not be assigned and tried in the court of errors of New York on writ of error to the supreme court, but the error may be assigned and tried in the latter court on writ of error *coram nobis*. *Davis v. Packard et al., 6 Wend., 327; same case, 10 ib., 51.*

In *Calloway v. Nifong, 1 Mo., 159*, it was assigned as error in fact that one of the defendants was dead before the judgment was rendered against the two defendants in the circuit court; and the supreme court of Missouri held that such error (not appearing of record) could not be assigned and heard in that court; that the only remedy was by writ of error *coram nobis* in the circuit court where the judgment was rendered.

By the laws of Missouri a slave could not be imprisoned in the penitentiary for larceny. An escaped slave was indicted and arraigned for larcenies, as a free person, in the criminal court of St. Louis; pleaded guilty, and was sentenced to the penitentiary. Afterwards his master applied to the supreme court to release him on *habeas corpus*, on the ground that he was illegally imprisoned. The court re-

fused the writ, deciding that the record of his conviction showing him to be a free person, it could not be averred in that proceeding that he was a slave; that the proper remedy was to apply to the criminal court, where the judgment was rendered, for a writ of error *coram nobis*, where it might be assigned and tried as error of fact that he was a slave when convicted. *Ex parte Toney, 11 Mo., 662.*

On writs of error in the supreme court of Missouri, errors of law appearing of record, and not errors of fact, are heard. *Powell v. Gott, 13 ib., 461.*

In a number of other states, where, on writs of error or appeals to the supreme courts, errors of law only can be assigned, it has been decided that errors of fact might be corrected in the circuit courts where the judgments were rendered, on writs of error *coram nobis*, that is, such errors of fact as might be corrected by such writ at common law. *Fellows v. Griffin, 17 Miss. (9 Smeed & M.), 362. Land v. Williams, 20 ib. (12 Sm. & M.), 362.*

In *Boughton v. Brown, 8 Jones (N. C.) L., 394,* BATTLE, J., said: " The distinction between an ordinary writ of error and a writ of *coram nobis* is that the former is brought for a supposed error in law, apparent on the record, and takes the case to a higher tribunal, where the question is to be decided, and the judgment, sentence or decree is to be affirmed or reversed; while the latter is brought for an alleged error of fact, not appearing upon the record, and lies to the same court, in order that it may correct the error, which it is presumed would not have been committed, had the fact in the first instance been brought to its notice."

See also, *Latham et al. v. Hodges et al., 13 Iredell (N. C.) L., 267; McKinney v. Western Stage Company, 4 Iowa (Clarke), 420; Meredith v. Sanders, 2 Bibb (Ky.), 101; Wynne v. The Governor, 1 Yerger, 149; Goodwin et al. v. Sanders et al., 9 Yerger, 91;*

34

cases cited in *2 Paschal's Dig., p. 948;* cases cited in *5 U. S. Digest, 1st series, p. 395,* etc.

If the error of fact assigned on a writ of error *coram nobis* be disputed, an issue must be made up to be tried by a jury; the judgment on whose finding, if for plaintiff, is that the former judgment be recalled and revoked. *Fellows v. Griffin, 17 Miss., (9 Sm. & M.,) 362;* and other cases above cited.

On writs of error, or appeals from the circuit court to this court, errors of law appearing of record only, can be reviewed. There can be no assignment of error of fact to be tried by a jury.

At the time the writ of error *coram nobis* was granted in Kahn's case, the term at which the judgment was rendered had closed, and it was not in the power of the circuit judge to set aside the judgment on motion, and a showing that he was insane when tried, or to order a jury to be impannelled to inquire into that fact. (See *Bonds v. The State, Martin & Yerger, 143.*) There was no remedy except by writ of error *coram nobis.*

If he was sane when tried, but insane when the offense was committed, that fact might have been proven under the plea of not guilty.

We think the circuit judge had power to issue the writ of error *coram nobis,* and upon the assignment of error in fact, that Kahn was insane when tried, if disputed by the state, to cause a jury to be impannelled in term to try such issue.

Change of venue. Had the circuit court power to order a change of venue, as it did, in this case?

The life of Kahn depended upon the result of the trial of the error of fact assigned. If found sane when tried and convicted, the judgment which had been rendered

against him on the verdict would stand, and a new day be fixed by the court for execution. If the issue was found in his favor, the judgment would be revoked, and he would be subject to a new trial when sane. Upon this issue of fact he was entitled to, and it was important that he should have, a trial by a fair and impartial jury. The affidavits required by the statute providing for change of venue in criminal cases were made. The question is not free from doubt. The case is not within the strict letter of the statute, but we have come to the conclusion that it is within its spirit and scope, and that the circuit court of Independence county had power to make the order changing the venue to the circuit court of Lawrence county. See *Gantt's Digest*, secs. *1868, 1886; 1 Bishop Cr. Pro., secs. 68, 71.*

But there is no provision of the statute that the circuit court of one county may send an issue of fact to the circuit court of another county to be tried by a jury, and retain the case for judgment and final disposition. The whole case goes on change of venue. When the error of fact was confessed by the attorney for the state, it was proper for the circuit court of Lawrence county to revoke the judgment, and hold Kahn for trial anew there. · If the case had been sent back to Independence for trial, the jury would have been taken from the inhabitants of that county, which it was the purpose of the change of venue to avoid. There can be but one change of venue in any criminal case or prosecution. (*Gantt's Dig., sec. 1886.*) True, the first paragraph of the answer alleges that the change of venue was for the sole purpose of trying the error of fact assigned, that Kahn was insane when tried and convicted, but the plea must be taken in connection with the record by which it verified, and which was made part of it, and it shows

Adler et al. vs. The State.

that the application for and the order changing the venue was general, as it should have been, and not special.

It follows that the court below did not err in sustaining the demurrer to the first paragraph of the answer.

II.   It is admitted by counsel for appellants that the second paragraph of the answer, alleging that Kahn was insane when the bail-bond was executed, is bad. He did not sign the bond, and it is not alleged that appellants, who executed the bond, were insane at the time and incapable of contracting.

2. BAIL:   III.   The third paragraph of the answer presents a novel
Principal
confined defense.
for insani-
ty in an- It is a general principle of law that when the perform-
other state.
ance of the condition of a bond or recognizance has been rendered impossible by the act of God, or of the law, or of the obligee, the default is excused. (*Co. Lit.*, *206, a; Bacon Ab.*, *tit. Conditions, Q.*) Where a man is bound for the appearance of W. N. *in banco*, if he die before the day the bond is saved. "There is a diversity," says Chief Justice BRIAN, "where a condition becomes impossible by act of God, as death, and where by a third person (or stranger), and where by the obligor, and where by the obligee; the first and last are sufficient excuses of forfeiture, but the second is not; for in such case the obligor has undertaken that he can rule and govern the stranger, and in the third case it is his own act. *Vin. Ab.*, *tit. Condition; People v. Bartlett, 3 Hill (N. Y.), 570.*

This is like any other contract (says Bishop), performance of which is excused by the act of the law or of God, or by the public enemy, yet by no difficulties of an inferior kind. Imprisonment of the principal for crime, therefore, will generally release the bail, the state having taken him out of their possession; and so will the surrendering of him to

the authorities of another state as a fugitive from justice. But if they permit him to go into another jurisdiction, and there he is arrested and imprisoned, they will not be released; for they should have kept him within his and their own state. *1 Bish. Crim. Pro., sec. 164 (i).*

*Belding v. The State, 25 Ark., 315,* the only case cited by counsel for appellants to sustain the defense set up in the third paragraph of the answer, is not in point. There the principal in the recognizance was seized by the military authorities of the United States of this department, and imprisoned in Little Rock, and then sent to Vicksburg and imprisoned there, and so prevented, without the fault of the surety, from appearing in the circuit court of Hot Spring county, at the September term, 1867, to answer an indictment, as required by the condition of the recognizance; and this was held to be a valid defense for the surety. There the principal was not prevented from appearing by the act of the obligee in the recognizance (the state), but by a force claiming to act under authority of the federal government, which neither the state nor the surety could control.

Bishop says the inability of the principal to perform the condition of the bond, produced by sickness to the degree which in law is deemed an impossibility proceeding from the act of God, will discharge the bail. *1 Bish. Crim. Pro., sec. 264, i, (3d ed.)*

To sustain the proposition thus formulated, he cites several cases, which we have examined.

In *The People v. Tubbs, 37 New York,* the defense was that when Tubbs, the principal, was called, and his sureties were required to produce him, he was sick and unable to go or be carried to the place where the court was held, and his non-appearance to answer the indictment for perjury was wholly without his fault or the fault of his bail. This was

held to be a good defense, the failure of Tubbs to appear being classed as an act of God; but it appears that Tubbs was present, and offered as a witness for the sureties on the trial of the action on the forfeited bail-bond, so that the state could not have suffered in the end by his failure to appear and answer the indictment at the term required by the bond.

In *The State v. Edwards, 4 Hump., 226,* to a *scire facias* on a forfeited recognizance, the surety pleaded that the principal was sick during the whole term of the court at which he was bound to appear.

The court held the plea bad. "The fact," said Judge GREEN, delivering the opinion of the court, "that a defendant is sick, constitutes no reason for his non-appearance in obedience to his recognizance, that will excuse the bail from a surrender of him at the subsequent term.

In *Alguire v. The Commonwealth, 3 B. Monroe, 349,* there was an attempt to excuse by the act of the state. The principal failed to appear in the circuit court of Kenton county, as required by the recognizance. The plea of the surety to the *scire facias* on the forfeiture was, that on the day the principal was required to appear, he was arrested for a felony in Louisville, and imprisoned there. The plea was held bad. The court said it was the duty of the surety to see that the principal was at Kenton circuit court, and not at Louisville, on the appearance day, when he was arrested at the latter place; and, moreover, that the surety should have made known the arrest to the court at the appearance term, and obtained its process for the principal, and for respite of the recognizance, etc.

The paragraph of the answer in question does not allege that Kahn was sent to the New York asylum for care and medical treatment by any act or authority of the state.

Adler et al. vs. The State.

He was in the custody of appellants as his bail. The inference from the plea is, that they assumed the responsibility of sending him there, without consulting the court, or. permitted others to do so. If, by the law and regulations of the asylum, he was detained there, as alleged, and out of the process of the court, it was not the fault of the. state, but the result of their sending him there, or permitting him to be sent.

The matter of the paragraph was pleaded in discharge; if the state had taken issue to it, instead of demurring, and a jury had found the issue in favor of appellants, they would have claimed judgment on the verdict discharging them from the bail-bond. And Kahn, though ever so sane, might never appear to answer the indictment.

It would be unsafe to the public to permit the bail of a person charged with murder to take it upon themselves to send him out of the state, or permit him to be sent, to be treated for insanity, or any other disease, and then plead his absence in discharge of the bail-bond.

Had the matter of the paragraph been addressed to the court, in the form of a motion, at the term at which Kahn should have appeared, if made satisfied of its truth, the court might, in the exercise of sound discretion, have continued the case, with leave to the bail to produce Kahn at a subsequent term. But by the plea for discharge, it appears, the matter was for the first time brought to the notice of the court; and the demurrer to it was rightly sustained.

IV. Upon the trial of the issue to the fourth paragraph of the answer, it was proven, to the satisfaction of the court sitting as a jury, that the sheriff took the bail-bond, as he was authorized to do by order of the court, released Kahn, and delivered the bond to the clerk, who marked it filed,

3. BAIL-BOND: Approval by officer not essential.

but the sheriff omitted to indorse his approval upon the bond. This was not essential to its validity. The execution of the bond by appellants was sufficiently proven, and it was in statute form.

The judgment is affirmed.