BRYCE BAIL BONDS, INC. *v.* STATE of Arkansas

CA 82-341                                       648 S.W.2d 832

Court of Appeals of Arkansas
Opinion delivered April 6, 1983
[Rehearing denied May 4, 1983.*]

*COOPER, J., not participating.

86

*Jeff Rosenzweig* and *Christopher C. Mercer, Jr.,* for appellant.

*Steve Clark*, Atty. Gen., by: *Alice Ann Burns*, Asst. Atty. Gen., for appellee.

GEORGE K. CRACRAFT, Judge. Bryce Bail Bonds, Inc. brings this appeal from an order of the circuit court denying its motion to vacate or remit in part a prior forfeiture of a bail bond executed by it in the amount of $30,000. The appellant contends that the trial court abused its discretion in entering judgment against it for the full amount of the bail bond. Ark. Stat. Ann. § 43-729 (Repl. 1977). We do not agree.

On May 11, 1979 Samuel Johnson was charged with eleven felony counts including possession of forgery devices, forgery and theft by receiving. He was released pending trial on $15,000 bond executed by David Kelly as agent for Cotton Belt Insurance Company. On September 4, 1979, the date set for trial, Johnson did not appear, was found guilty by the court on all counts and a bench warrant was issued for him. Sentence was deferred pending his apprehension. On September 15, 1979 the bond for his appearance at trial was forfeited, but this forfeiture is not the subject of this appeal. He was not apprehended until November 19, 1979, and on December 5th was surrendered to the court and given a sentence of 33 years in the Arkansas Department of Correction as a habitual offender. Johnson filed a notice of appeal on December 17, 1979 and was released pending the appeal on appearance bond of $30,000 executed by Kelly as agent for the appellant.

On September 15, 1980 his conviction was affirmed by the Supreme Court of Arkansas but the mandate was recalled pending his petition for writ of certiorari to the U.S. Supreme Court. The U.S. Supreme Court denied his writ and the mandate of our Supreme Court affirming his conviction was issued on March 18, 1981, and bench warrant was issued for his arrest out of the circuit court. On July 16, 1981 the trial court issued a summons to the appellant to show cause why judgment should not be entered against it on Johnson's appeal bond because of his failure to surrender. On September 1, 1981 the bondsman failed to appear

or surrender Johnson and the bond was forfeited by the court.

In December, 1981 Johnson was apprehended in Louisiana, waived extradition and was surrendered to the trial court on January 7, 1982. The appellant then filed its motion to set aside the order of forfeiture on procedural grounds or in the alternative, because the apprehension of Johnson was brought about by the actions of appellant, asked that some part of the forfeiture be remitted and credit given for the expenses incurred in that apprehension.

At a hearing the appellant offered evidence tending to prove various amounts spent in travel, payment to informants, telephone calls, reward commitments and other incidental expenses it incurred leading to the capture of Johnson by the authorities in Louisiana. Appellant refers to a policy of the courts to "prorate bond forfeitures according to the time in which the defendant has been out of custody, with credit for expenses incurred in locating defendant and effecting his capture."

Our review of cases dealing with bail bonds discloses several settled rules with regard to forfeiture and principles and guidelines governing remission which are to be applied on a case by case basis. Most of these cases are collected and discussed in *Tri-State Bonding Co.* v. *State,* 263 Ark. 620, 567 S.W.2d 937 (1978); *Craig and Schaaf* v. *State,* 257 Ark. 112, 514 S.W.2d 383 (1974); and *Allied Ins. Co.* v. *State,* 268 Ark. 934, 597 S.W.2d 115 (Ark. App. 1980). These cases recognize that in determining a forfeiture of bail, the underlying basis for admitting one to bail must be considered. The defendant, rather than being held in custody by the State, is released to the surety who assumes custody of him and is responsible to the court for his appearance at any time. The defendant is regarded as being in the custody of his surety from the time of execution of the bond until he is discharged and his bail is considered a jailer of his own choosing. Although the surety is not expected to keep the principal in physical restraint he is expected to keep close track of his whereabouts and keep him within this state subject to the jurisdiction of the court. *Adler* v. *State,* 35 Ark. 517, 37 Am. Rep. 38 (1880).

The surety is not released from forfeiture except where an act of God, the State, or of a public enemy, or actual duress prevents appearance by the accused at the time fixed in the bond. Absent one of those excuses the failure of an accused to appear at the time fixed is sufficient basis for forfeiture.

Proceedings after forfeiture are summary ones. The order to show cause pursuant to Ark. Stat. Ann. § 43-729 (Repl. 1977) merely affords the bondsman an opportunity to be heard with respect to remission of all or some part of the forfeiture. *Craig* v. *State,* 257 Ark. 112, 514 S.W.2d 383 (1974).

Where the principal does not appear there is no exoneration from liability under the bond, regardless of the extent of the search by the surety, if the surety shows no more than a disappearance of the principal. The trial court's authority to remit a forfeiture when the accused is subsequently surrendered by the surety is discretionary and that discretion will not be interfered with unless it is arbitrary or abused. It devolves upon the bail bondsman to establish facts which justify favorable action in the exercise of the trial court's discretion, and the failure to allow him even his expenses in this matter is not necessarily an abuse of the court's discretion. The mere fact that the bail takes the accused into custody after the forfeiture and surrenders him to the authorities, even during the same term of court, does not entitle the bail to a right to remission of the penalty, even through the return of the principal was at the expense of the surety. *Hickey* v. *State,* 150 Ark. 304, 234 S.W.2d 168 (1921).

Where the charge against the accused is a serious one and a long sentence is probable, the degree of care expected of the bondsman is greater than in the case where the charge is of a less serious nature, where the accused has a good defense to present and if convicted faces punishment of a degree not likely to cause him to flee. The degree of care of a bondsman for a convicted and sentenced felon is higher than that of a surety for one yet untried and still clothed with a presumption of innocence.

Here the fault of the surety was great. It executed the bail bond with full knowledge that the prior one had been forfeited for non-appearance. With this awareness the surety made no effort to keep itself informed about his whereabouts and permitted him to leave the State.

Bryce Marlar, owner of Bryce Bail Bonds, Inc. testified that he was aware of the responsibilities of the bondsman to keep informed as to the principal's whereabouts and of the necessary precautions to be taken to prevent his disappearance. He stated that he had too many bonds to keep up with all of them personally and "assumed" that agent Kelly, who did not testify, was attending to it. Marlar did nothing. He was not aware that the conviction had been affirmed or of the issuance of the mandate until the show cause order was served on him. His files did not disclose the name of Johnson's attorney and so far as the record shows no effort was made to find out who was representing him, the status of his appeal, or to ascertain his whereabouts until after the forfeiture had been ordered.

Appellant thereafter employed "bounty hunters" and "snitches" to locate him. The bounty hunter testified that appellant was unable to furnish him any leads at the time he was employed. Although it appears that Johnson's subsequent apprehension was brought about largely by the effort of the appellant, the record shows that there was a total disregard by appellant of all of his duties as surety on the bond and that the fault for the forfeiture lay largely with the surety.

Appellant argues that the court erred in not applying the rules referred to in *Allied Ins. Co. v. State, supra,* where it was stated that in determining forfeiture consideration should be given to a reduction to allow recovery of expenditures in apprehending the principal, compensation to the State for delay, and maintenance of forfeitures within a range which will assure continued commercial availability of the bonds and yet assure that sureties continue to try to meet their obligation to produce the defendant on time. While we do not depart from those declarations, we simply hold that they have no application here where there has been

a total failure to meet any of the obligations. The principle that when a risk is great a total disregard of the bondsman's obligation warrants total forfeiture must be a corollary to the above rules.

Johnson was a convicted felon sentenced to a term of 33 years. He had already forfeited bond for fleeing to avoid prosecution. He had been tried in absentia and had presented no evidence in his own defense. While he did perfect an appeal there is no showing as to what errors were relied upon or their relative merits. Under these circumstances Johnson's known proclivity to flee and the added inducement to do so after sentencing were of such a degree as to require extra precaution. The record shows that the trial court had previously announced that it was open at all times to accept custody of the principal whenever the surety suspected that his bond was in jeopardy. Regular docket calls were held for that purpose. Appellant at no time availed itself of this rule, ostensibly because it had taken no notice of the responsibility it had assumed. The record discloses still another aggravating circumstance to public convenience and safety. There was testimony that at the time Johnson was apprehended in Louisiana the officers searched his residence and found check writing cards, blank checks, credit cards and sufficient other tools of the forger's trade to warrant a 60 count indictment in that state. The disposition of those charges was not disclosed.

Under the facts and circumstances of this particular case we find no abuse of discretion in refusing to remit any part of the forfeiture.

Affirmed.

COOPER, J., not participating.