Bob SHUMPERT, O. H. Clopton, and Glenn Dickson
*v.* ARKO TELEPHONE COMMUNICATIONS, INC.

93-1236                                    888 S.W.2d 646

Supreme Court of Arkansas
Opinion delivered December 5, 1994

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *Tom D. Womack*, for appellant.

*Welch & Adcock*, by: *L. Ashton Adcock*, for appellee.

Tom Glaze, Justice. Arko Telephone Communications, Inc. brought suit against Bob Shumpert, O. H. Clopton, Glenn Dickson and Roy Browning, d/b/a Shumpert Sound Systems (SSS), alleging SSS breached the parties' August 5, 1977 contract. Under that ten-year contract, Arko was to supply telephone equipment

and engineering support, and SSS was to pay Arko five percent of its gross sales on all telephone equipment sold. In addition, SSS granted Arko the first option to purchase its assets, if SSS opted to sell its business. Arko claimed that, on March 5, 1982, it learned SSS had sold its business on July 10, 1981, without having notified Arko. As a consequence, Arko filed this lawsuit on February 27, 1986.

In its pretrial motion for summary judgment, SSS asserted Arko's claim was barred by the five-year statute of limitations. SSS contended that it had repudiated the parties' 1977 agreement on March 6, 1980, when SSS sent Arko two checks, indicating the checks were its final payments under the parties' agreement. Citing *Dupree* v. *Twin City Bank*, 300 Ark. 188, 777 S.W.2d 856 (1989), SSS relied on the general rule that the true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion. Under this rule, SSS argues Arko could have first filed suit after March 6, 1980, thus Arko was time barred when it waited until 1986, or nearly six years, to bring its claim. The trial court rejected SSS's statute of limitations argument by denying its motions for summary judgment and directed verdict. We affirm the trial court's rulings.

SSS's reliance on *Dupree* is misplaced. There, Dupree (and other plaintiffs) alleged Twin City Bank orally agreed it would forego deficiency judgments against the plaintiffs, if the plaintiffs would find purchasers to buy the property against which the Bank was seeking foreclosure. Dupree contended that he and the other plaintiffs kept their end of the agreement, but the Bank breached the parties' oral agreement when it refused to release them from its judgment liens. The trial court determined Dupree had delayed filing suit longer than the applicable three-year statute of limitations period which commenced at the time the Bank failed to approve an order satisfying the plaintiffs' deficiency judgments. This court upheld the lower court, based upon the undisputed evidence reflecting the Bank and plaintiffs entered their oral agreement in December 1983, the Bank breached it soon after October 21, 1984, when it failed to satisfy plaintiff's judgment liens and the plaintiffs delayed bringing suit until April 1, 1988, which was outside the three-year limitation period.

In the present case, while SSS claims it breached the parties' 1977 contract on March 6, 1980, the parties continued to do business with one another. Thus, even though SSS on March 6, 1980 may have breached its original contract with Arko, Bob Shumpert testified at trial as follows:

> So after cancelling the contract March 6, 1980, I still had to have some arrangement to do business with Arko. I set about negotiating with Mr. Prody [Arko] to come up with some agreement . . . The final agreement that I operated under was to continue to order the equipment . . . at cost plus five percent. This new agreement was not in writing.

Shumpert also testified that, during negotiations, Arko first submitted a written agreement to amend the parties' 1977 contract. Under that proposed agreement, the parties' original agreement would have effectively continued, but SSS would pay only two and one-half percent of its gross sales rather than five percent. In fact, while SSS ultimately decided not to execute the proposed new agreement, it did make one payment under that new agreement. Furthermore, Shumpert said that SSS pursued the spirit of the newly drafted agreement, and he stated further, "We worked on a basic agreement and we did agree in principle."

It is well settled that a written contract may be modified by a later oral agreement. *O'Bier* v. *Safe-Buy Real Estate*, 256 Ark. 574, 509 S.W.2d 292 (1974).[1] In view of this evidence, including the testimony of Mr. Shumpert, we cannot sustain SSS's insistence that the parties' original 1977 contract is absolutely controlling. At the least, a fact issue existed concerning whether the parties' original contract had been orally amended and when SSS breached that amended agreement. *See O'Bier*, 256 Ark. at 576, 509 S.W.2d at 293; *cf. Orsini* v. *Larry Moyer Trucking, Inc.*, 310

---

[1]We note that the general rule is that a material modification of a contract within the Statute of Frauds must be in writing in order to be valid and binding. Such a contract cannot be modified in essential parts by parol agreement so as to be valid against a plea of invalidity under the Statute of Frauds. *Reynolds* v. *Havens*, 252 Ark. 408, 479 S.W.2d 528 (1972); *Ferguson* v. *The C. H. Triplett Company*, 199 Ark. 546, 134 S.W.2d 538 (1939); *Valley Planing Mill Co.* v. *Lena Lumber Co.*, 168 Ark. 1133, 272 S.W. 860 (1925). No objection was interposed in the present case to invoke this rule, thus we need not discuss these cases further.

Ark. 179, 833 S.W.2d 366 (1992). SSS had the burden to establish that, as a matter of law, it came within the terms of the statute of limitations. *Alston* v. *Bitely*, 252 Ark. 79, 477 S.W.2d 446 (1972).[2] SSS simply failed to do so, and the trial court's denying SSS's summary judgment and directed verdict motions must be upheld.

SSS next argues that the court erred in allowing Arko to introduce proof of damages which Arko purportedly sustained after the fall of 1982 because Arko ceased doing business after that time. In sum, it contends that after 1982, Arko could no longer perform under the parties' contract and damages sustained by Arko after that date were inadmissible. SSS's argument is wholly without merit.

Without objection, the trial court gave the jury an instruction concerning lost profits. Among other things, the court instructed the jury that the law provides that Arko was to be fairly compensated for all damages, if any, to its business or property, which was proximately caused by SSS's conduct, including lost profits. The court further instructed that Arko's recovery should not be affected because of the difficulty in ascertaining a precise amount, particularly if SSS caused that difficulty. The jury was cautioned against awarding speculative damages and was told some reasonable basis in the evidence must be considered when determining if Arko had in fact suffered a loss of profits. Finally, the trial court concluded that in arriving at the amount of loss of profits sustained by Arko, the jury was entitled to consider any past earnings of Arko in the business in question, as well as any other evidence in the case bearing upon the issue. *See Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 688 S.W.2d 275 (1985); *First Service Corp.* v. *Schumacher*, 16 Ark. App. 282, 702 S.W.2d 412 (1985).

The record reflects Arko showed that its revenues under its agreement with SSS were approximately twenty-five percent of Arko's net profits. Arko also indicated it would have been able to continue in business had SSS honored its obligations under the contract. In short, the mere fact that Arko ceased doing busi-

---

[2]The three-year statute of limitations controlling oral agreements was not raised below.

ness as a result of SSS's failure to meet its contract obligations was reason enough to permit Arko's evidence bearing on its loss of profits. Certainly, Arko's profits or revenues before SSS's breach and its proof of damages afterwards are admissible.

■■ Finally, Arko on cross-appeal seeks certain costs and litigation expenses that it says are recoverable under the parties' 1977 contract even though such costs or expenses are not authorized by statute. Arko claims entitlement to costs and expenses in the amounts of $4,551.97 and $1,480.00, but does not abstract an itemization of these totals. Nor does the trial judge's letter opinion attached to Arko's brief reflect those items. In fact, the judge stated that he "will not address the issue of costs" and concluded costs are a creature of statute and may not be taxed unless they are provided by statute. The judge was entirely correct. *Darragh Poultry & Livestock Equip. Co.* v. *Piney Creek Sales, Inc.*, 294 Ark. 427, 743 S.W.2d 804 (1988). To the extent the trial judge considered this issue and the issue was preserved and abstracted by Arko in this appeal, we affirm.

For the reasons above, we affirm on both direct and cross appeals.