Argued and submitted March 31, affirmed June 12, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# CLIFFORD YOUNG,
*Appellant.*

## 97-04-33357; A109398

71 P3d 119

Rebecca Duncan, Deputy Public Defender, argued the cause for appellant. On the brief were David E. Groom, Acting Executive Director, Office of Public Defense Services, and Meredith Allen, Deputy Public Defender.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, Deits, Chief Judge, and Kistler, Judge.

KISTLER, J.

**KISTLER, J.**

Defendant appeals from a judgment of conviction for aggravated murder, arguing that the trial court lacked jurisdiction to sentence him. We affirm.

In 1997, defendant was indicted on six counts of aggravated murder, one count of first-degree robbery, and one count of first-degree burglary. All eight counts stemmed from the killing of Ruth Bonneau while defendant and another person, Tonya Davis, robbed Bonneau in her home. Following his indictment, defendant entered into a plea agreement with the state. Defendant agreed to plead guilty to three counts of aggravated murder (counts 2, 5, and 6) and to testify against Davis. The state agreed to recommend that defendant be sentenced to three concurrent life terms with the possibility of parole. The plea agreement provides that, if defendant fails to comply with it, the state will "[p]roceed to trial and sentencing phase on the remaining counts of Aggravated Murder, Robbery, and Burglary."

To remove any doubt about the last point, the agreement adds:

> "[Defendant] understands that the state will proceed to trial and sentencing phase on aggravated murder, robbery and burglary charges against him if he fails to comply with the terms and conditions of this agreement. Further, [defendant] understands that all sentencing options under ORS 163.105(1), including the Death Penalty and a Life Sentence without the possibility of parole will be available for the jury to consider in the event that he violates the conditions of this agreement and the jury finds him guilty of Aggravated Murder."

Finally, the agreement states:

> "[Defendant] agrees to waive all his state and federal constitutional rights, including but not limited to double jeopardy, speedy trial and Fourth and Fifth Amendment rights as they relate to all charges in the * * * indictment. This waiver will occur just prior to the plea. The defendant must agree that the waiver will prohibit any claim of double jeopardy should the defendant be tried or re-indicted for the

Aggravated Murder, Robbery and Burglary charges pertaining to the robbery, burglary and aggravated murder of Ruth Bonneau."

Consistently with the plea agreement, defendant pled guilty to three counts of aggravated murder, and the trial court sentenced him on October 2, 1998, to three concurrent terms of life imprisonment with the possibility of parole. After defendant began serving his sentence, he breached the plea agreement. Pursuant to the terms of the agreement, the state tried defendant on the remaining three counts of aggravated murder (counts 1, 3, and 4), as well as the other two charges. Defendant pled guilty to all five charges, and the trial court held a penalty phase hearing on the three new aggravated murder convictions so that the jury could determine whether defendant should be sentenced to life, life without the possibility of parole, or death.

Before the penalty phase hearing, defendant moved to dismiss that hearing for lack of jurisdiction. He argued that he had been charged with a single homicide, that he had been tried and sentenced for that crime, and that the trial court lacked jurisdiction to impose a second sentence on him for a single murder. The trial court denied defendant's motion, in part, because we had held in *State v. Barrett*, 153 Or App 621, 958 P2d 215 (1998), that multiple aggravated murder convictions could be entered for a single homicide. After the penalty phase hearing, the jury sentenced defendant to life without the possibility of parole on the remaining three aggravated murder counts.

Defendant appealed. While his appeal was pending, the Supreme Court reversed our decision in *Barrett. See State v. Barrett*, 331 Or 27, 10 P3d 901 (2000). Defendant argues that, under the Supreme Court's decision in *Barrett*, his aggravated murder convictions on counts 1, 3, and 4 should merge with his earlier convictions on counts 2, 5, and 6. It follows, he reasons, that the court lacked jurisdiction to sentence him on counts 1, 3, and 4, although the reasons for that conclusion are not completely clear. He may be arguing that the trial court simply lost jurisdiction over him once he began serving the first sentence. Alternatively, he may be arguing that the court lost jurisdiction because it could not merge the

second aggravated murder sentence with the first aggravated murder sentence that he had started serving.[1] Before turning to defendant's arguments, we begin with the state's claim that we may not review the issue that defendant has raised on appeal.

On that point, the state notes that the plea agreement provides that, if defendant breaches it, he may be tried on the remaining three counts of aggravated murder and that, if convicted, "all sentencing options under ORS 163.105(1), including the Death Penalty and a Life Sentence without possibility of parole will be available for the jury to consider." The state reasons that, because defendant's sentence on the second group of aggravated murder charges was the product of a stipulated sentencing agreement, ORS 138.222(2)(d) precludes us from reviewing it.

The state's threshold argument fails for two reasons. ORS 138.222(2)(d) precludes appellate courts from reviewing a sentence that results from a stipulated sentencing agreement.[2] Defendant, however, is not asking us to review his sentence. Rather, he is asking us to decide whether the trial court had jurisdiction to sentence him. A party cannot stipulate to jurisdiction, *State v. Miner*, 218 Or 502, 504, 342 P2d 773 (1959), and nothing in ORS 138.222(2)(d) precludes us from considering defendant's jurisdictional challenge. Beyond that, ORS 138.222(2)(d) "allow[s] review of sentences unless they were 'stipulated sentences' as illustrated in ORS 135.407." *State v. Kephart*, 320 Or 433, 447, 887 P2d 774 (1994); *see State v. Upton*, 132 Or App 579, 583-84, 889 P2d 376, *rev den*, 320 Or 749 (1995) (explaining that ORS 135.407 is illustrative, not exclusive). In this case, defendant did not stipulate to a sentence "as illustrated in ORS 135.407."[3]

---

[1] On appeal, defendant assigns error to multiple rulings. We write only to address his first two assignments of error—that the trial court lacked jurisdiction to sentence him on the second group of aggravated murder charges. We affirm the remainder of the rulings to which he assigns error without discussion.

[2] ORS 138.222(2)(d) provides that an appellate court shall not review "[a]ny sentence resulting from a stipulated sentencing agreement between the state and the defendant which the sentencing court approves on the record."

[3] ORS 135.407 pertains to stipulated sentencing agreements where the state and a defendant either agree to a sentence within a range of sentences, stipulate to a specific grid block classification within the sentencing grid, or stipulate to a sentence that exceeds the sentencing guidelines. In all those situations, the stipulated

*Kephart*, 320 Or at 447. Rather, he agreed that, if he breached the plea agreement and was convicted of additional charges of aggravated murder, the entire range of sentences for that crime would be available. That is not the sort of stipulated sentence that ORS 135.407 contemplates or to which ORS 138.222(2)(d) applies. We accordingly turn to the merits of defendant's argument.

■  As noted, two related but separate theories appear to underlie defendant's jurisdictional argument. He may be arguing that, once the trial court sentenced him for aggravated murder and that sentence was executed, the court lost jurisdiction to impose a second sentence on him for that crime.[4] Defendant is correct that the trial court lacked authority to modify the executed sentence on counts 2, 5, and 6. *See State v. Leathers*, 271 Or 236, 240, 531 P2d 901 (1975) (under the common law, a trial judge's power to modify or vacate a valid sentence ends once the sentence has been executed). The trial court, however, did not purport to modify that sentence. Rather, it imposed a separate sentence on the new aggravated murder convictions on counts 1, 3, and 4. Defendant cites no authority for the proposition that the trial court lacked either personal or subject matter jurisdiction to sentence him on those new aggravated murder convictions, nor is any apparent. *See State v. Terry*, 333 Or 163, 186, 37 P3d 157 (2001) (explaining that subject matter jurisdiction in a criminal case attaches as a result of the issuance of the indictment or information).[5]

Defendant may be making an alternative jurisdictional argument based on *State v. Highland*, 28 Or App 251, 558 P2d 1298 (1977). He may be arguing that, under the

---

sentence is either a specific sentence or a defined subset of sentences from a larger class of potential sentences.

[4] Defendant argues:

"After a sentence has been executed, a trial judge has no more sentencing authority, except to correct errors in an illegal or otherwise invalid sentence. *State v. Leathers*, 271 Or 236, 240, 531 P2d 901 (1975). * * * [T]he execution of defendant's sentence, on counts 2, 5 and 6 of aggravated murder[,] divested the trial court of its sentencing jurisdiction as to the remainder of the counts."

[5] Defendant may have had a claim that double jeopardy bars imposing multiple sentences for a single crime, but that claim does not go to the court's jurisdiction. Moreover, defendant waived any double jeopardy objection to the imposition of multiple sentences when he entered into the plea agreement.

Supreme Court's decision in *Barrett*, the trial court was required to merge the conviction on the second set of aggravated murder convictions (counts 1, 3, and 4) with the first set of aggravated murder convictions (counts 2, 5, and 6). However, the trial court lacked authority to do that because defendant had begun serving the sentence on the first set of aggravated murder convictions. Defendant reasons, "Because the [trial] court could not impose multiple convictions and sentences on multiple counts of aggravated murder [under *Barrett*], it could not sentence defendant a second time. Therefore, the court did not have jurisdiction to hold a penalty phase trial as described in ORS 163.150."

■        Defendant's alternative jurisdictional argument turns on the premise that he has a right to insist that the aggravated murder convictions on counts 1, 3, and 4 merge with the aggravated murder convictions on counts 2, 5, and 6. Because all the aggravated murder convictions arose out of a single homicide, defendant ordinarily would have that right. *See Barrett*, 331 Or at 36-37. In this case, however, defendant gave up his right to seek merger when he agreed that he could be tried and sentenced on the second set of aggravated murder charges separately from the first. The plea agreement provides that, if defendant breaches it, the state may "[p]roceed to trial and sentencing phase on the remaining counts of Aggravated Murder[.]" Later in the agreement, defendant represented that he understood that the state would "proceed to trial and sentencing phase on aggravated murder * * * charges against him if he fails to comply with the terms and conditions of this agreement" and that the jury could impose a harsher sentence on him (life without the possibility of parole or death) if he were convicted on the second set of aggravated murder charges.

The terms of the plea agreement are clear. The state reserved the right to seek additional convictions and sentences on the remaining aggravated murder charges if defendant breached the agreement, and defendant expressly agreed that it could do so. *See Kephart*, 320 Or at 437 n 5 (explaining that, in a similar agreement, the "state reserved the right to seek a separate conviction and sentence for aggravated murder" should certain conditions occur). Defendant cannot claim that the state is precluded from doing

what he agreed it could do. *See State v. Miller,* 116 Or App 432, 435, 841 P2d 678 (1992), *rev den,* 315 Or 443 (1993). To the extent that defendant's jurisdictional argument is premised on the claim that the second set of aggravated murder convictions should merge with the first, the terms of the plea agreement negate the premise on which that argument rests.

Our decision in *Highland* does not point in a different direction. In *Highland,* the defendant was indicted for attempted murder and burglary. *Id.* at 253. The defendant moved to sever the charges, and the state elected to proceed initially on the attempted murder charge. *Id.* The jury convicted the defendant of attempted manslaughter. *Id.* After the defendant began serving his five-year sentence on that conviction, the state tried and convicted him of burglary. *Id.* The trial court then vacated the sentence for attempted manslaughter and sentenced him to 10 years' imprisonment on the burglary conviction. *Id.*

On appeal, "[t]he state concede[d] that [the] defendant could be sentenced only either for the burglary or for the attempted manslaughter but could not be sentenced for both." *Highland,* 28 Or App at 253. Given that concession, we reasoned that the trial court lacked jurisdiction to vacate the sentence for attempted manslaughter after the defendant began serving it and that the subsequent "conviction and sentence imposed for burglary cannot stand." *Id.* at 254. This case differs from *Highland* in at least one critical respect. In *Highland,* the state conceded that it could not sentence the defendant for burglary in addition to attempted manslaughter. Here, defendant expressly agreed that, if he breached the plea agreement, the state could seek additional convictions and sentences for aggravated murder. In light of defendant's agreement, *Highland* is not controlling.

Affirmed.