# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3736

_____

United States of America,

        Appellee,

v.

M, A, Yah, also known as
Allen Cotton,

        Appellant.

\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of Nebraska.
\*
\*
\*
\*
\*

_____

Submitted: June 15, 2007
Filed: September 11, 2007

_____

Before MELLOY, SMITH, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Pursuant to a plea agreement, M, A, Yah pled guilty to one count of conspiracy to commit bank fraud, a violation of 18 U.S.C. §§ 371 and 1344, and one count of aggravated identity theft, a violation of 18 U.S.C. § 1028A. The district court sentenced Yah to a total of 54 months of imprisonment. Yah appeals his sentence, alleging (1) the district court erred in imposing a four-level leadership enhancement pursuant to United States Sentencing Guidelines § 3B1.1(a), (2) the government breached the plea agreement by not recommending the low end of the applicable Guidelines range, and (3) his sentence is unreasonable. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.    Background

Yah was indicted in six counts of an eleven-count indictment for various offenses related to bank fraud and use of false identification.  All of the charges stemmed from a scheme through which the co-conspirators would open bank accounts using false identification based upon false birth certificates Yah created.  Checks would be written on those accounts for amounts exceeding the funds held in the account.  The co-conspirators would then cash the checks, again using false identification based upon false birth certificates Yah made.

Yah entered into a plea agreement with the government, agreeing to plead guilty to conspiracy to commit bank fraud (Count I) and aggravated identity theft (Count VIII),  in return for the government's dismissal of the remaining charges against him. The plea agreement also included stipulations regarding the application of the United States Sentencing Guidelines and the government's position as to Yah's sentence. First, as to the government's sentencing recommendation, the plea agreement stated:

> Provided that you demonstrate acceptance of responsibility to the Probation Office and to the Court, the undersigned Assistant United States Attorney stipulates that you notified authorities in a timely manner of your intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  *The undersigned Assistant United States Attorney for the District of Nebraska further agrees to recommend a sentence at the low end of the applicable sentencing guideline.*  The United States Attorney for the District Of Nebraska also agrees that the defendant will not be prosecuted for any additional criminal conduct in the District Of Nebraska emanating from the federal investigation [of] the defendant for Bank Fraud and Identity Theft.

(Emphasis added).  Second, the government agreed to $7,876.75 as the amount of loss for relevant conduct and restitution purposes.  Third, the parties agreed that loss

-2-

amount was the only specific offense characteristic adjustment under § 2B1.1 that applied to Yah's conduct. Fourth, the parties agreed to litigate "the applicability of any enhancement for role in the offense." Finally, the parties agreed to a total offense level of 8, before application of either a reduction for acceptance of responsibility or an increase due to role in the offense. The district court accepted Yah's pleas of guilty to Counts I and VIII and deferred acceptance of the plea agreement pending review of a Presentence Investigation Report (PSR).

The PSR presented a summary of the defendant's relevant conduct and a proposed sentencing calculation under the Guidelines. The PSR's recommendations differed from those contemplated in the plea agreement. First, the PSR recommended that Yah be held responsible for $24,992.12 in loss, far greater than the plea agreement loss amount of $7,876.75. Second, the PSR applied specific offense characteristic adjustments from § 2B1.1 other than amount of loss. Third, the PSR did not recommend Yah receive a reduction for acceptance of responsibility. Also, the PSR resolved the dispute over the application of a role enhancement in favor of the government, recommending a four-level increase pursuant to § 3B1.1(a). The defendant timely objected to the PSR.

After reviewing the PSR and considering the defendant's objections, the district court entered tentative findings on a number of contested issues. The court concluded "the plea agreement should be upheld" as to the loss amount, the application of additional § 2B1.1 specific offense characteristic adjustments, and acceptance of responsibility. The court reserved ruling on the question of a role enhancement.

A.     Role Enhancement

At the sentencing hearing the court considered whether Yah qualified for an increase in offense level based upon his role in the offense. The government presented testimony from Yah's co-conspirators and co-defendants, Robert McFarland and Clinton Brooks, regarding the nature of the conspiracy to commit bank fraud and Yah's role within the conspiracy. McFarland testified that the members of the conspiracy used false identifications Yah provided to cash checks written on fake bank accounts. After the co-conspirators cashed checks, they were required to turn over a portion of the proceeds to Yah. McFarland stated he watched Yah and other conspiracy members fraudulently cash checks before he did. McFarland identified Annette Clark and Mark Rex as other members of the conspiracy to commit bank fraud.

Brooks testified that Yah brought him into the conspiracy and that Yah taught him how to "scam." Brooks provided Yah with his children's social security cards and Yah created false birth certificates using the children's information. Brooks testified that Yah supplied the checks that Yah, McFarland, Annette Clark, and he cashed. The checks were in the name "Dairyonius Stewart," which is a false name that Yah has used. Brooks further testified that Yah instructed the conspiracy members on how to utilize false checks most efficiently. Brooks also identified Nathan Johns, Courtney Baker, and Tammy Bonnema as members of the conspiracy.

The district court found McFarland and Brooks credible and relied upon their testimony in determining that Yah was an organizer or leader of criminal activity involving eight participants. Thus, the district court applied a four-level increase to Yah's offense level. See U.S.S.G. § 3B1.1(a).

B.     Government Recommendation

After pleading guilty, but before sentencing, Yah was charged with a number of state criminal offenses. The government argued at sentencing that Yah breached the plea agreement by engaging in criminal conduct while on release pending sentencing. Therefore, the government argued Yah should not be granted an acceptance of responsibility reduction. The government further argued it was not bound to make a recommendation at the low end of the applicable Guidelines range because Yah failed to accept responsibility for his criminal conduct.

The district court declined "to have a miniature trial on what may be a fairly complex case against the defendant" on the new state charges and decided to grant a two-level reduction for acceptance of responsibility despite the allegations. The court responded to the government's argument:

> [I]f the government contends that the defendant has in some way breached the plea agreement by engaging in additional criminal conduct while on pretrial release, and the government does not consider itself bound to recommend the low end, that's fine.
>
> As far as I'm concerned, you can recommend what you want to recommend because it's just a recommendation anyway. And I recognize that the guidelines are advisory, and I recognize that I can sentence anywhere in the statutory range.

The government presented argument to the court in support of a sentence at the high end of the Guidelines range, stating, in part:

> I do not feel constrained by the plea agreement to recommend a low end of the sentencing guideline range, your Honor, in part because paragraph 2 starts out saying, "Provided that you demonstrate acceptance of responsibility." And then it goes on further, and then it says, "The

undersigned United States Attorney agrees to further recommend a sentence at the low end of the applicable guideline range."

I realize that the Court has given this particular defendant the benefit of some acceptance of responsibility. But I view my obligation to make a recommendation for the low end consistent with the plea agreement conditioned upon his acceptance of responsibility. And I think I've made a record of the fact that I don't think that's happened. So I am not asking the Court to sentence him at the low end of the guideline range.

The defendant objected to the government's statements, arguing that the government breached the plea agreement. The court did not specifically rule on the objection, but responded:

And for the record, regardless of what the government would have recommended in this case, it would not have affected what I am going to do in this case as far as the sentencing is concerned.

Yah's criminal history placed him in category VI, and, based on the determinations discussed above, Yah's total offense level was 10, resulting in an advisory Guidelines range of 24–30 months for Count I. Count VIII carried a statutory mandatory minimum of not less than two years of imprisonment, to be served consecutively to any other term of incarceration. See 18 U.S.C. § 1028A. The court sentenced Yah to 30 months in prison on Count I and 24 months in prison on Count VIII, to be served consecutively.

II.    Discussion

A.    Role in the Offense

Yah argues the district court erred in concluding he was a leader or organizer of criminal activity involving five or more people. Thus, Yah contends the court erred in imposing a four-level enhancement pursuant to § 3B1.1(a). "We review for clear error the district court's factual findings underlying the imposition of a sentencing enhancement based on the defendant's role in the offense," United States v. Rosas, 486 F.3d 374, 376 (8th Cir. 2007), and examine de novo the application of the Guidelines. United States v. Mickle, 464 F.3d 804, 807 (8th Cir. 2006).

Under § 3B1.1, an upward adjustment of four levels applies if "the defendant was an organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1(a). We interpret the terms "organizer" and "leader" broadly. See United States v. Manuel, 912 F.2d 204, 207 (8th Cir. 1990) ("We have recognized a broad definition of what constitutes a leadership and organizational role.") (internal quotation omitted). The factors considered in determining whether a defendant is a leader or organizer include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n.4.

Considering these factors, the district court did not clearly err in finding Yah was a leader or organizer of a scheme involving five or more people. First, the

evidence supports the district court's conclusion that the criminal activity involved eight people. McFarland and Brooks specifically identified five people, in addition to themselves and the defendant, who were involved in the conspiracy. Second, the testimony of McFarland and Brooks also supports the district court's conclusion that Yah was a leader or organizer of the scheme. Yah created and distributed the identification documents and the checks necessary to accomplish the fraud. He instructed and advised the others on how to use the fraudulent checks most efficiently. And, Yah received a portion of the proceeds from the other participants when they successfully cashed the fraudulent checks. This testimony, which the district court specifically found to be credible, provides sufficient grounds to conclude Yah was a leader or organizer. Thus, the four-level enhancement under § 3B1.1(a) was properly applied.

### B.    Government Recommendation

Yah alleges the government breached the plea agreement by failing to recommend a sentence at the low end of the applicable Guidelines range. The government contends its obligation to recommend the low end of the Guidelines range was conditioned upon Yah demonstrating acceptance of responsibility and Yah failed to fulfill that condition by engaging in criminal conduct after his plea.

"Issues concerning the interpretation and enforcement of a plea agreement are reviewed *de novo*." United States v. Borer, 412 F.3d 987, 994 (8th Cir. 2005). We apply general contract principles in interpreting plea agreements. United States v. Gomez, 271 F.3d 779, 781 (8th Cir. 2001).

In considering whether the government's recommendation agreement was conditional, we turn to the text of the plea agreement. The portion of the plea agreement addressing the government's recommendation reads:

Provided that you demonstrate acceptance of responsibility to the Probation Office and to the Court, the undersigned Assistant United States Attorney stipulates that you notified authorities in a timely manner of your intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. The undersigned Assistant United States Attorney for the District of Nebraska further agrees to recommend a sentence at the low end of the applicable sentencing guideline. The United States Attorney for the District Of Nebraska also agrees that the defendant will not be prosecuted for any additional criminal conduct in the District Of Nebraska emanating from the federal investigation [of] the defendant for Bank Fraud and Identity Theft.

The use of the term "[p]rovided" makes it is clear that the government conditionally agreed that Yah met the standards outlined in § 3E1.1(b). See U.S.S.G. § 3E1.1(b) (outlining the information the government must provide to the court in a motion for an additional one-level reduction if the defendant has an offense level 16 or greater). The condition precedent, however, cannot be read to apply to the government's "further" agreement to make a specific sentencing recommendation. The relevant paragraph contains three independent promises of the government in return for Yah's guilty plea:

> 1) Provided that you demonstrate acceptance of responsibility to the Probation Office and to the Court, the undersigned Assistant United States Attorney stipulates that you notified authorities in a timely manner of your intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.
>
> 2) The undersigned Assistant United States Attorney for the District of Nebraska *further* agrees to recommend a sentence at the low end of the applicable sentencing guideline.
>
> 3) The United States Attorney for the District Of Nebraska *also* agrees that the defendant will not be prosecuted for any additional criminal

conduct in the District Of Nebraska emanating from the federal investigation [of] the defendant for Bank Fraud and Identity Theft.

(Emphasis added). The use of the words "further" in the second sentence and "also" in the third demonstrates the independence of the three separate promises.

Our court's decision in United States v. Jensen, 423 F.3d 851, 853–54 (8th Cir. 2005), presents a similar scenario. There, the court found the government breached the plea agreement by failing to move for the third-level reduction after the court determined the defendant accepted responsibility for his crimes. The government argued that a caveat earlier in the plea agreement applied and gave the government the right not to recommend the third level of acceptance of responsibility. The court "note[d] that the government could no doubt have drafted the agreement in such a way as to make express its argued-for meaning," but concluded the plea agreement could not be so construed. Id. at 854.

The government's interpretation of its obligation to recommend a low-end sentence strains the plain language of the plea agreement. Cf. Borer, 412 F.3d at 994–95 (finding no breach when the government failed to recommend the low end of the guideline range, when the "plain language of the plea agreement" made the obligation to do so contingent). Even if we were to accept the government's alternate interpretation as plausible, that would indicate the language of the plea agreement is ambiguous. Because ambiguities in plea agreements are construed against the government, our analysis would be unchanged. See United States v. Jensen, 423 F.3d 851, 854 (8th Cir. 2005) ("Where a plea agreement is ambiguous, the ambiguities are construed against the government.")

Based upon the terms of the plea agreement, we conclude the government was unconditionally obligated to recommend a sentence at the low end of the applicable Guidelines range. Failure to do so constituted a breach of the plea agreement.

Having concluded that the government breached the plea agreement, we turn now to the appropriate remedy. The district court specifically stated that the government's recommendation was irrelevant to the determination of Yah's sentence, so any error would seem to be harmless. However, the Supreme Court's opinion in Santobello v. New York, 404 U.S. 257 (1971), and subsequent cases in this court make clear harmless error review is unavailable. Like the instant case, in Santobello, the sentencing court stated it was not influenced by the prosecution's recommendation, which was contrary to the plea agreement. The Supreme Court stated:

> Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case . . . .

Id. at 262. As this court has since held, "[t]he fact that the district court stated that the government's remark did not influence its decision does not ameliorate the government's breach." United States v. McCray, 849 F.2d 304, 305 (8th Cir. 1988). Under Santobello, the defendant is entitled to specific performance and resentencing by a different judge or the opportunity to withdraw his plea. 404 U.S. at 263. As such, we must remand. Like the Supreme Court in Santobello, "[w]e emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." Id.

In light of our decision to remand this case for re-sentencing, we decline to address Yah's claim that his sentence was unreasonable.

III.    Conclusion

The sentence is vacated, and the case is remanded for resentencing before a different judge in accordance with the procedures of the District of Nebraska.

_____