2009 Ark. 113

**Charles Wayne GREEN, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–903.**

Supreme Court of Arkansas.

March 5, 2009.

Jeff Rosenzweig, Little Rock, and Ray Spruell, Jonesboro, for appellant.

Dustin McDaniel, Att'y Gen., by: Deborah Nolan Gore, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

This appeal arises from an order of the Randolph County Circuit Court granting the State's motion to vacate Appellant Charles (Chad) Green's plea agreement and reinstating the original charges against him. We affirm.

In 2003, Appellant and his father, Billy Green, were charged with four counts of capital murder. Appellant was also charged with two counts of rape in a separate incident. On August 9, 2003, Appellant entered into a written plea agreement with the State. Pursuant to the plea agreement, Appellant was required to testify for the prosecution in his father's capital murder trial and to "fully cooperate" with the prosecution of his father. Appellant also gave a video-taped statement in conjunction with the written plea offer. Appellant later attempted to withdraw from the agreement, claiming that the statement he made pursuant to the agreement was coerced. Plea negotiations continued, resulting in a plea offer being made by the prosecutor's office on February 6, 2004. The offer incorporated the previous offer of August 9, 2003, but with a reduced term of imprisonment. Appellant accepted the plea offer by letter on February 11, 2004. The State attempted to withdraw the agreement because Appellant's proffer of testimony did not comply with the terms of the written agreement.

The parties subsequently resolved their dispute over the proffer provision and reached an agreement. On March 2, 2004, Appellant pled guilty to one count of first-degree murder and one count of kidnapping. He pled no contest to the two counts of rape. At the plea hearing, the trial court asked the prosecution to state the negotiated plea. In explaining the plea, the State did not specifically reference the written agreement. Appellant was sentenced pursuant to the plea agreement. A judgment and commitment order was filed on May 27, 2004.

Appellant testified for the prosecution, and Billy Green was convicted of capital murder and sentenced to death. In *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006), we reversed Billy's conviction and remanded for a new trial. In 2006, the State sought to re-interview Appellant in order to prepare for Billy's new trial. Appellant's attorney, Larry Kissee, reported to the prosecutors that Appellant would not submit to a re-interview, but would reserve his comments for the new trial. The State filed a motion to vacate Appellant's judgment and commitment order and to reinstate the original charges against him. A hearing commenced on March 2, 2004, wherein the trial court found that Appellant had breached his plea agreement with the State and granted the State's motion to vacate. Appellant now brings his appeal.

For his first point on appeal, Appellant asserts that the trial court erred in holding that he breached his plea agreement. Specifically, Appellant contends that (1) the August 9, 2003 agreement which the State seeks to enforce is not the agreement which was eventually consummated; and (2) the State's motion is premature.

The State responds, asserting that Appellant failed to comply with the plea agreement. Specifically, the State contends that (1) the plea agreement includes the terms of the August 9, 2003 agreement; (2) Appellant violated the terms of the plea agreement by refusing to meet with prosecutors regarding Billy Green's new trial; and (3) the State's motion was not premature.

Issues concerning the interpretation and enforcement of a plea agreement are reviewed de novo. *United States v. Yah*, 500 F.3d 698 (8th Cir.2007). We apply general contract principles in interpreting plea agreements. *Id.* When a dispute arises over the meaning of a plea agreement, this court will discern the intent of the parties "as expressed in the plain language of the agreement viewed as a whole." *Miles v. State*, 350 Ark. 243, 85 S.W.3d 907 (2002).

In the August 9, 2003 agreement, Appellant agreed to "fully cooperate with the prosecution of Billy Green concerning all charges to be filed against him including but not limited to four counts of capital murder," and to "testify at trial in the State's case against Billy Green." The offer was made under the condition that Appellant "fully comply with all provisions of the offer made by the State of Arkansas referenced herein. Any reluctance or failure to perform the acts set forth in this agreement shall void the document." In his motion to enforce plea agreement, Appellant admits that the plea offer accepted by Appellant on February 11, 2004, incorporated the previous offer of August 9, 2003, but with a reduced term of imprisonment.

When asked by the trial court to read the negotiated plea agreement into the record, the State stated the following:

> Your Honor, subject to, the state will read the facts and subject to the defendant admitting to those facts and plead-

ing guilty in Case Number 2003–123 and subject to his pleading guilty to the facts as will be announced by the State in Case Number 2004–23, the state will make the following recommendation: That sentence be deferred against this defendant until such time as he has testified against his co-defendant, Billy Green, which testimony will be truthful and consistent with his previous testimony given to the police by video recorded statement on August 9, 2003. In addition the defendant will make every effort to help the police locate the murder weapon, the .22 caliber rifle. Again, that's subject to his pleading to the facts which will be read into the record when Your Honor asks for them. The recommendation will be that he serve twenty years on the Class Y first degree murder, twenty years on the Class Y kidnapping, both of these to be consecutive, and those are subject to the seventy percent rule. Recommendation would be that he serve two twenty year sentences on each, on each of the two rape charges in 2004–23, those two twenty year sentences to run concurrent and concurrent with Case Number 2003–123. The State requests and I understand the agreement is that sentencing will be deferred until after the defendant has testified in the co-defendant's trial. Last but not least, he'll get jail time credit from the date of his arrest back I believe the end of July, 2003, whatever number of days that is, at the time he testifies.

The State admits that it did not read the written agreement into the record or reference the written agreement. However, Appellant's counsel stated, "we understand that we are to comply with the plea agreement," and that "we agree to cooperate with the State." Appellant agreed with his counsel's statement by stating "yes, sir." He stated "yes, sir" when asked if he

understood his guilty plea statement and "no, sir" when asked if he had any questions regarding the statement.

■ It is well settled that a written contract may be modified by a later oral agreement. *Shumpert v. Arko Tel. Commc'ns, Inc.,* 318 Ark. 840, 888 S.W.2d 646 (1994). Appellant asserts that the written plea agreement is not incorporated in the final agreement because the parties' ultimate agreement included two prison terms of twenty years, as opposed to the two twenty-five-year terms contemplated in the written plea. He relies on *State v. Crawford,* 373 Ark. 95, 281 S.W.3d 736 (2008) for his proposition that a plea agreement is limited to the terms read into the record at trial. In *Crawford,* we held that the State was free to bring a subsequent prosecution on a felony charge because the record did not reflect that a nolle prosequi was an unconditional dismissal or a final disposition of the case. We did not, as Appellant asserts, hold that a plea agreement must consist solely of the terms read into the record at trial.

The State points out that it would be illogical to presume that the State, when offering to reduce the prison term in Appellant's favor, also agreed to abandon virtually all of the other conditions set forth in the parties' written agreement. We agree. Here, the parties' agreement was set out in advance through the written agreement. The State explained the substance of the agreement in open court, but did not abandon the conditions of the written agreement. All negotiations between the State and Appellant were based on the original August 9, 2003 plea agreement. Thus, we hold that the written agreement was not voided by the statements read into the record in open court, and that it was incorporated into the final plea agreement.

We turn now to Appellant's assertion that he fulfilled his obligations of the plea agreement by testifying in Billy's first trial and is not required to now testify in a second trial. In *Miles, supra,* the appellant entered into a plea agreement with the State whereby he agreed to testify truthfully at his accomplice's trial in return for a reduced charge and sentence. At his accomplice's first trial, he testified truthfully that he and his accomplice committed aggravated robbery. The trial ended in a mistrial. At the accomplice's second trial, the appellant changed his testimony, claimed that his former statement was coerced, and testified that neither he nor his accomplice was involved in the crime. We held that the appellant had breached the plea agreement by testifying falsely at the accomplice's second trial. We stated that the word "trial" used in the plea agreement did not apply solely to the first trial that ended in a mistrial. "Clearly, the intent of the parties was for testimony to be used in a trial deciding the issue of guilt." *Id.* at 253, 85 S.W.3d at 914.

Here, the agreement did not limit Appellant's testimony to the "original trial" or to "one trial only." Thus, we hold that the intent of the parties "as expressed in the plain language of the agreement viewed as a whole," was for Appellant to testify truthfully in a trial ending in a final judgment against his father.

Appellant argues in the alternative that even if he is obligated to testify in a retrial, the State's motion to vacate was premature because he has not yet been called to the stand at the retrial. Appellant refused to meet with the prosecuting attorney on August 21, 2006, to discuss his testimony against his father. In the hearing on the motion to vacate, Appellant's attorney, Larry Kissee, testified to the following:

He just said he would—tell them I am not going to talk to them. I think he said something to the effect that he would tell the true story when he testified.

The issue here is whether Appellant was obligated not only to testify at retrial, but whether he was also obligated to cooperate with the prosecutors before his testimony. In the August 9, 2003 plea agreement, Appellant agreed to "fully cooperate with the prosecution of Billy Green." At the plea hearing, the following colloquy took place:

Mr. Kissee: We agree to cooperate with the state.

Appellant: Yes, sir.

The Court: Yes, sir to his statement?

Appellant: Yes, sir.

Clearly, Appellant agreed to cooperate with the State in the plea agreement. We conclude that such cooperation includes not only testifying at retrial, but also assisting prosecutors in their preparation for trial, which Appellant refused to do. Based on the terms of the plea agreement, Appellant has breached the plea agreement by refusing to cooperate with the State.

We now turn to the issue of the State's remedy. Appellant asserts that neither the State nor the trial court cited any Arkansas procedure that would permit the vacation of a consummated plea and sentence. He contends that once his sentence was put into execution, it could no longer be amended. The State responds, asserting that the only way to enforce the plea agreement was for the trial court to vacate Appellant's plea and sentence.

We have long held that a trial court loses jurisdiction to modify or amend an original sentence once the sentence is put into execution. *Gavin v. State,* 354 Ark. 425, 125 S.W.3d 189 (2003). Here, the trial

court did not amend or modify Appellant's sentence. Rather, the trial court simply enforced the terms of the plea agreement entered into by the parties. Under the terms of the agreement, both parties bargained for and received substantial benefits. The State obtained Appellant's guilty plea and his promise to testify against his father. Appellant received reduced charges and sentence. Appellant should not be allowed to benefit from his breach of this agreement. Applying general contract principles to this case, the appropriate remedy is to vacate the breached plea agreement and restore the parties to their respective positions before the plea agreement was entered.

■ Appellant also argues that if we do hold that a trial court can vacate a plea agreement that has been breached, such a procedure's retrospective application to Appellant would violate federal and state constitutional guarantees of the due process of law under the Fifth and Fourteenth Amendments and article 2, § 8 of the Arkansas Constitution. Appellant cites to *Mauppin v. State,* 309 Ark. 235, 831 S.W.2d 104 (1992), where we stated the following:

"Ex post facto" literally means a law passed after the fact. That is, after the occurrence of the fact, or the crime. The constitutional prohibition on ex post facto laws is a limitation upon the powers of the legislature and does not of its own force apply to the judicial branch. However, the principle on which the clause is based, the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties, is fundamental to our concept of constitutional liberty, and as such, is protected against judicial action by the due process clause of the Fifth Amendment. *Marks v. United States,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).

Accordingly, the Supreme Court held that an unforeseen judicial enlargement of a criminal statute, applied retrospectively, operates precisely like an ex post facto law that is prohibited by Article I, § 10 of the Constitution of the United States, and it follows that such an interpretation is barred by the due process clause of the Fourteenth Amendment from achieving precisely the same result by judicial construction.

Once again, the trial court in the present case is not attempting to enlarge a criminal statute. The trial court is not changing, amending, or modifying Appellant's sentence. It is simply vacating the plea agreement that was entered into between Appellant and the State because Appellant breached the agreement. As for Appellant's argument that he did not have fair warning of the consequences of his actions, the plea agreement clearly gives Appellant fair warning that he must cooperate with the prosecutors. At the hearing, the State made it clear for the record the consequences if Appellant breached the agreement, stating:

[I]f the defendant fails or refuses to comply with the announced agreement that he would testify truthfully and consistently against his father, consistent that is with his statement of August 9th of 2003, that this recommendation by the state is not binding on the Court and that he is subject to the full range of punishment under the law for all four of those offenses.

Appellant cannot now argue that he did not have fair warning that he must cooperate with the State.

■ For his final point on appeal, Appellant asserts that the vacation of the plea agreement and retrial would violate his federal and state constitutional guarantees against double jeopardy. Appellant also contends that a retrial would be barred by

Arkansas Code Annotated § 5–1–112, which allows a former prosecution to be an affirmative defense to a subsequent prosecution for the same offense in certain circumstances.

The United State Supreme Court rejected the argument that the reinstatement of original charges pursuant to a plea agreement violated the Double Jeopardy Clause in *Ricketts v. Adamson*, 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). In *Ricketts*, the appellant and the State of Arizona entered into an agreement wherein the State obtained the appellant's guilty plea and his promise to testify against "any and all parties" involved in a murder. The appellant, a direct participant in the murder, received a reduced sentence and the State's promise that he would not be prosecuted for his involvement in certain other crimes. The plea agreement stated that if the appellant breached the agreement, it would become null and void and his original charge would be automatically reinstated. The Court held that, under those provisions, the agreement was precisely equivalent to an agreement waiving a double-jeopardy defense. Applying *Ricketts* to the present case, we hold that Appellant waived his double-jeopardy defense by entering into a plea agreement providing that he would become subject to the full range of punishment for his original charges in the event of a breach. Moreover, Appellant's argument regarding Ark. Code Ann. § 5–1–112 is premature as he has not yet been prosecuted. Based on the foregoing, we hold that the trial court did not err in vacating Appellant's judgment-and-commitment order and reinstating his original charges.

Affirmed.

BROWN, J., concurs.

HANNAH, C.J., and WILLS, J. dissent.

IMBER, J., not participating.

ROBERT L. BROWN, Justice, concurring.

I concur in the result but write separately to express why I believe the circuit judge had jurisdiction of this matter.

As the majority notes, the general rule subscribed to by this court is that once a valid judgment is put into execution, the circuit judge is without jurisdiction to modify or amend it. *See, e.g., Gavin v. State*, 354 Ark. 425, 125 S.W.3d 189 (2003). In my opinion, what separates this case from the general rule is the fact that the judgment was conditioned on Green's trial court testimony and that condition was not satisfied.

In *People v. Collins*, 45 Cal.App.4th 849, 53 Cal.Rptr.2d 367 (1996), which involved a similar fact situation and issue, the California Court of Appeals concluded:

> The relevant question is not whether the trial court had jurisdiction to reconsider the sentence imposed but, rather, whether the trial court had jurisdiction to consider a motion to vacate a judgment that was specifically conditioned upon the validity of a plea bargain agreement which, in turn, was expressly conditioned upon defendant's truthfulness.

*Id.* at 374.

Likewise, in the instant case, the relevant question is not whether the circuit judge has jurisdiction to modify or amend a valid sentence once imposed. Rather, the question is whether a circuit judge has jurisdiction to vacate a conditional judgment, and, specifically, one that is conditioned upon the parties' future compliance with the terms of a plea agreement, when that condition is not met.

Here, Green's judgment was conditioned upon the terms of his plea agreement with the State, which, in turn, was conditioned upon Green fully cooperating with the State and testifying against his father, Billy Green. When Green failed to abide by the terms of his plea agreement, the condition supporting his judgment failed, and the judgment became invalid. Because of this, the circuit judge did not violate the general rule that a *valid* judgment once executed may not be amended.

Two additional points support what I consider to be an exception to the general rule. The rationale and policy behind the general rule is that a circuit judge's attempt to extend a defendant's sentence, after a sentence is put into execution, implicates double jeopardy considerations, *see Emerson v. Boyles,* 170 Ark. 621, 280 S.W. 1005 (1926), while an attempt to reduce a defendant's sentence, once put into execution, infringes upon the clemency power of the executive branch, *see Coones v. State,* 280 Ark. 321, 657 S.W.2d 553 (1983). In the case before us, the circuit judge is not attempting either to extend or reduce Green's punishment, but rather he is ruling on the validity of his conditional judgment, where the condition has not been satisfied. Under these facts, the rationale behind the general rule is not implicated.

Additionally, as the majority notes, under the terms of a plea agreement, both the defendant and the State bargain for and receive a benefit. The reciprocal nature of plea agreements mandates that each party have the right to enforce the agreement when deprived of the benefit of their bargain. *See Collins,* 53 Cal.Rptr.2d at 374. Were a circuit judge unable to hold a party to the terms of its plea bargain, this would undermine the entire judicial process regarding plea agreements. In this connection, it is axiomatic that courts have inherent authority to protect the integrity of the judicial process. *See U.S. v. Britt,* 917 F.2d 353, 355 n. 2 (8th Cir.1990); *Valley v. Phillips County Election Comm'n,* 357 Ark. 494, 183 S.W.3d 557 (2004).

For these reasons, I believe the circuit judge had subject-matter jurisdiction of this matter, and I would affirm.

JIM HANNAH, Chief Justice, dissenting.

I respectfully dissent. Quite simply the circuit court lacked subject-matter jurisdiction to vacate Charles Wayne Green's sentence. "[W]here the defendant has entered upon the execution of a valid sentence, the court loses jurisdiction over the case." *Coones v. State,* 280 Ark. 321, 323, 657 S.W.2d 553, 555 (1983). Any attempt to alter or revise a valid sentence already put into execution is a void act, and the original sentence remains in force. *Williams v. State,* 229 Ark. 42, 313 S.W.2d 242 (1958). Once a valid judgment is put into execution, the trial court is without jurisdiction to modify, amend, or revise it. *Renshaw v. Norris,* 337 Ark. 494, 989 S.W.2d 515 (1999); *Davis v. State,* 291 Ark. 191, 723 S.W.2d 366 (1987); *see also Emerson v. Boyles,* 170 Ark. 621, 280 S.W. 1005 (1926).

The majority cites *Gavin v. State,* 354 Ark. 425, 125 S.W.3d 189 (2003), for the proposition that a valid sentence may not be amended or modified, but it may be vacated because that is not a modification. *Gavin* does not support that proposition. The critical language in *Gavin* is that conviction and imposition of sentence deprive "the trial court of jurisdiction to amend or modify a sentence". *Id.* at 430, 125 S.W.3d at 191. The issue in *Gavin* was *loss of jurisdiction* (emphasis added) and not whether a circuit court could vacate a sentence that it could not modify or amend. I

fail to understand how a court lacks jurisdiction to modify a sentence but has jurisdiction to vacate that sentence.

The concern is that, because Green entered into a plea agreement and received the benefit of the agreement, he should not be able to retain that benefit unless he carries out his end of the agreement by testifying against his father. I could not agree more that Green should be required to fulfill his agreement. However, the majority, in insuring that Green does not retain the benefit of his bargain without fulfilling his end of the bargain, is disregarding over eighty years of precedent by allowing the circuit court to vacate Green's sentence. This is not necessary.

While we have not previously addressed a similar fact pattern, other states have. The case of *Brunelle v. State*, 113 S.W.3d 788 (Tex.Crim.App.2003) is similar to the one before us. In a plea agreement to a charge of capital murder, Brunelle agreed to testify against a co-defendant and in return received a lesser conviction and sentence. However, Brunelle then refused to testify. The State of Texas moved the trial court to set aside the plea agreement and conviction arguing that Brunelle had breached his agreement. The trial court did so. The Texas Court of Criminal Appeals noted that the conviction on the plea agreement was three years old and held that the trial court's jurisdiction over the matter had expired. The court expressly rejected the notion of "a species of contract jurisdiction enabling it to interpret the plea agreement and to set it aside if it determines the agreement has been breached." *Brunelle*, 113 S.W.3d at 790. The court noted that while contract principles apply to plea agreements, "they may not be enforced to the detriment of due process." *Id.* The proper path was set out in *Brunelle*:

We find no precedent for the proceeding initiated by the State in this case, nor can we see any necessity or purpose for it. Appellant has been reindicted for this offense, which should serve as adequate notice to Appellant that the State considers the plea agreement invalid. If Appellant believes this conviction still bars the subsequent prosecution, he may challenge the subsequent prosecution in an appropriate proceeding wherein he would have the opportunity to more fully develop the facts.

*Id.*

By entering into the plea agreement, Green waived any objections to trial on the charges if he breached the agreement. Therefore, if Green breached the plea agreement, the existing judgment and conviction on the plea agreement is no bar to a subsequent prosecution and trial. Double jeopardy concerns do not dictate that the former conviction and sentence be vacated before Green is tried on the charges.

In short, either Green breached the plea agreement, waiving any objection to prosecution, or he did not. The circuit court lost jurisdiction to consider the plea agreement or its breach under both the criminal law and contract law. The State may proceed with the prosecution and let the question of the breach and the defense of double jeopardy be decided as a defense in that subsequent prosecution, a proceeding in which the circuit court has jurisdiction to act. I would declare the acts of the circuit court void and allow the State to proceed as it sees fit.

ELANA CUNNINGHAM WILLS, Justice, dissenting.

Because I cannot agree that the circuit court had subject-matter jurisdiction of this action, I respectfully dissent.

Cases are legion in Arkansas for the proposition that a trial court loses jurisdic-

tion to modify or amend an original sentence once the sentence is put into execution. *See, e.g., Gavin v. State,* 354 Ark. 425, 125 S.W.3d 189 (2003) (citing *Pike v. State,* 344 Ark. 478, 40 S.W.3d 795 (2001); *McGhee v. State,* 334 Ark. 543, 975 S.W.2d 834 (1998); *DeHart v. State,* 312 Ark. 323, 849 S.W.2d 497 (1993); *Jones v. State,* 297 Ark. 485, 763 S.W.2d 81 (1989)). We have made clear that this is a loss of *subject-matter* jurisdiction. *Gates v. State,* 353 Ark. 333, 107 S.W.3d 868 (2003); *Bagwell v. State,* 346 Ark. 18, 53 S.W.3d 520 (2001).[1]

As noted by the majority, the appellant entered into a plea agreement with the State and sentencing was deferred until after the Appellant testified in Billy Green's trial. After Billy Green's trial, the Appellant was sentenced pursuant to the plea agreement and a judgment and commitment order was filed on May 27, 2004. The State later returned to the circuit court and filed a motion to vacate the judgment and commitment order, alleging a breach of the plea agreement. In my view, once the trial court put the Appellant's sentence into execution by issuing the commitment order, it lost subject-matter jurisdiction to entertain the State's motion to vacate the judgment.

The majority concludes that "the trial court did not amend or modify Appellant's sentence." In my view the "vacation" of a sentence certainly amends or modifies it. In addition, the majority concludes that the circuit court, rather than amending or modifying the Appellant's sentence, "simply enforced the terms of the plea agreement entered into by the parties" and that "[a]pplying general contract principles to this case, the appropriate remedy is to vacate the breached plea agreement...." The majority does not indicate how this confers subject-matter jurisdiction on the circuit court. Subject-matter jurisdiction cannot be conferred by consent of the parties, *State v. J.B.,* 309 Ark. 70, 827 S.W.2d 144 (1992) (citing *Hargis v. Hargis,* 292 Ark. 487, 731 S.W.2d 198 (1987); *Venhaus v. Hale,* 281 Ark. 390, 663 S.W.2d 930 (1984)), nor may it be waived. *Vowell v. Fairfield Bay Community Club Inc.,* 346 Ark. 270, 58 S.W.3d 324 (2001); *see also Servewell Plumbing v. Summit Contractors,* 362 Ark. 598, 210 S.W.3d 101 (2005)("Parties may by agreement consent to personal jurisdiction ... but subject-matter jurisdiction cannot be conferred merely by agreement of the parties."); *Moore v. Richardson,* 332 Ark. 255, 964 S.W.2d 377 (1998); *Douthitt v. Douthitt,* 326 Ark. 372, 930 S.W.2d 371 (1996). The entry or enforcement of a plea agreement, therefore, does not confer subject-matter jurisdiction on a circuit court after the sentence has been put into execution.

We are not the first state to grapple with this problem. For example, in *Dier v. State,* 524 N.E.2d 789 (Ind.1988), the Indiana Supreme Court concluded that a trial court was without jurisdiction to vacate a sentence and impose the original sentence where the defendant, whose original sentence was reduced pursuant to agreement with the State in exchange for his testimony against another defendant, later testified for the same defendant in the latter's post-conviction proceeding. The trial court cited the State's assertion that the defendant "committed fraud on

---

**1.** A sentence is placed into execution when the court issues a commitment order, unless the trial court grants an appellate bond or specifically delays execution of sentence on other valid grounds. *See DeHart, supra.* A limited exception to the loss of jurisdiction, not applicable here, is found at Ark.Code Ann. § 5-4-301(d) (Repl.2006), which empowers circuit courts to modify certain original sentences following probation revocation hearings.

the State and the court" and "breached his contract made with the State to the extent justice requires he not profit from his ignoble deeds." The Indiana Supreme Court stated, however, that "[w]hatever merit there is to this contention fails to give jurisdiction to the trial court." *Id.* at 790; *see also Moore v. State*, 686 N.E.2d 861 (Ind.App.1997) (reversing trial court's vacation of defendant's sentence after breach of plea agreement, relying on *Dier*, *supra*, and finding no "Indiana law which grants a trial court jurisdiction over a defendant after it pronounces sentence based upon the breach of a plea agreement").

In addition, in *State v. Young*, 188 Or. App. 247, 71 P.3d 119 (2003), a defendant was originally indicted for eight counts of murder, robbery and burglary. He pled guilty under a plea agreement to three of the murder charges and specifically agreed that if he breached the agreement, the State could try him on the remaining charges and that he would waive any double jeopardy or speedy trial issues. He later breached the agreement and the State prosecuted him on the remaining charges. He pled guilty to the remaining charges, but during the penalty phase, argued a lack of jurisdiction. The Oregon Court of Appeals held that the defendant was "correct that the trial court lacked authority to modify" the three executed murder sentences he had received, but that the court did have jurisdiction to impose separate sentences on the remaining charges.

Finally, in *People v. Collins*, 45 Cal. App.4th 849, 53 Cal.Rptr.2d 367 (1996), the California Court of Appeals was faced with a juvenile defendant who pled guilty pursuant to a plea agreement to a single count of being an accessory to murder after the fact. The defendant agreed in the plea agreement to testify concerning the actions and criminal offenses of all persons involved in the murder and the agreement provided that a breach would render it null and void and result in reinstatement of the original charges. In return, the defendant was committed to the California Youth Authority for a term of five years. The State, following a series of events, later deemed the agreement to have been breached, and moved to set aside the plea agreement and sentence in order to resume the proceedings against the defendant. After the trial court granted the motion, the defendant entered a plea to the new indictments by the grand jury and received a prison sentence of twenty-one years. The defendant appealed, alleging both the absence of any specific statutory authorization for such a post-conviction motion by the State, and the lack of jurisdiction occurring after the original sentence had been put into execution.

The California Court of Appeals first held that even absent a specific statutory procedure, California "state law supports the existence of remedial power to act upon a post-conviction petition brought by either the defendant or the prosecution to enforce the terms of a plea bargain agreement." *Id.* at 863, 53 Cal.Rptr.2d 367. With regard to jurisdiction, the court held that the defendant was "estopped" from raising the court's lack of jurisdiction to act. Although noting that "if a court is without jurisdiction no amount of consent or estoppel can bestow it," the court held that the rule applies only to *subject-matter jurisdiction*, which the court found was present in the case before it. It is unclear on what basis the appellate court concluded that *subject-matter* jurisdiction existed in the California trial court.

Arkansas law, however, is clear that subject-matter jurisdiction is lost after the sentence of a defendant has been put into execution. *Gates, supra.* While I agree with the majority that the Appellant

should not be allowed to benefit from his breach of the plea agreement, I cannot conclude that the trial court had subject-matter jurisdiction of the State's motion to vacate the sentence. This is a problem that calls out for a solution, either by way of a legislative amendment, a change in our rules, or the availability of the ancient writ of error *coram nobis* in this particular circumstance.[2] Unfortunately, these remedies are unavailable on the current rec-

ord. I must, therefore, respectfully dissent.

HANNAH, C.J., joins.

---

2.  A writ of error *coram nobis* may provide a procedural means to vacate a plea and sentence, but this is an "extraordinarily rare remedy, more known for its denial than its approval." *Deaton v. State*, 373 Ark. 605, 285 S.W.3d 611 (2008) (citing *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000)). This particular writ is "allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature." *Id.* (citing *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999) (per curiam)). A writ of error *coram nobis* is only appropriate when an issue was not addressed or could not have been addressed at trial because it was somehow hidden or unknown and would have prevented the rendition of the judgment had it been known to the trial court. *Echols v. State*, 360 Ark. 332, 201 S.W.3d 890 (2005). The writ was originally available in both criminal and civil cases, but has been abolished in civil cases in Arkansas. Ark. R. Civ. P. 60(k) (2008). In *Larimore v. State*, 327 Ark. 271, 279, 938 S.W.2d 818, 821 (1997), this court stated a "circuit court can entertain a writ of error *coram nobis* after appeal only if we grant permission." In the present case, Green did not appeal his sentence. In *Adler v. State*, 35 Ark. 517, 525 (1880), the court noted that "[w]hether the circuit court, in the exercise of its common law powers, may issue the writs of error coram nobis, has not heretofore been decided by this court." Upon consideration of the question and examination of the writ's jurisprudence in Britain and the United States, the *Adler* court held, apparently even after execution of the sentence, that "[w]e think the circuit judge had power to issue the writ of error *coram nobis*, and upon the assignment of error in fact ... to cause a jury to be impannelled [sic] in term to try the issue." *Id.* at 530. However, it appears that the jurisdiction of trial courts to entertain writs of error *coram nobis* has been divested by adoption of a rule, beginning with *Emerson v. Boyles*, 170 Ark. 621, 280 S.W. 1005 (1926), that a trial court loses jurisdiction once a sentence has been executed. *See also Hodge v. State*, 320 Ark. 31, 894 S.W.2d 927 (1995); *Howell v. Kincannon*, 181 Ark. 58, 24 S.W.2d 953 (1930).